WALTER J. DOUGLAS, D.B.A. *v.* CASIMER L. SMULSKI

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 64766

Memorandum filed March 23, 1957.

*Rundbaken, Ryter & Lehrer,* of Hartford, for the plaintiff.

*Davis, Lee, Howard & Wright,* of Hartford, for the defendant.

PARMELEE, J. In the fall of 1953 defendant determined to erect a commercial building on his property on New Britain Avenue in West Hartford. He sought an architect to lay out, design and draft the plans and specifications. He went to see the plaintiff, believing him to be an architect. On December 17, 1953, defendant entered into a written agreement with plaintiff wherein the defendant is described and signed as the "Owner," and the plaintiff is described and signed as the "Architect." The agreement was prepared by plaintiff on a short printed form entitled "Owner and Architect Form of Agreement." This agreement made the printed "Statement of services to be rendered by Architects and Schedule of Minimum Fees complying with Fair Practice" a part of the agreement. However, the "Architects Basic Fee" was written in as follows: "The owner agrees to pay the architect for the above named services a sum equal to a *fee* based on the basic rate of five per cent . . . ." The paragraph relating to "Supplementary Services" was stricken out. Section 9 of the "Statement of services" provides among other things that the working drawings and detailed specifications form a part of the contract documents. Therefore the "Specifications" are a part of the contract and there, on page 1 (A), it is provided that "Standard Form A2, current edition of the American Institute of Architects, are hereby made a part of this Specification to the same extent as if bound herein." This "Standard Form A2," just mentioned, is also a part of the complete agreement and is in evidence as an exhibit. This document contains forty-four articles of gen-

eral application to the owner, the contractor and the architect. Direct reference to duties or responsibilities of the architect is contained in thirty-five of these articles and, indeed, is concerned either generally or specifically with the other articles. The complete written agreement between the parties is to be found in the documents mentioned. It is concluded that the contract agreement of December 17, 1953, between the defendant and the plaintiff was an agreement on the part of the plaintiff to perform architectural services for and on behalf of the defendant.

Section 1749c of the 1953 Cumulative Supplement (as amended, Cum. Sup. 1955, § 2305d) provides that "no person shall practice architecture in this state, except as hereinafter provided, or use the title 'architect,' or display or use any words, letters, figures, title, sign, seal, advertisement or other device to indicate that such person practices or offers to practice architecture, unless such person shall have secured a certificate of registration as provided in this chapter."

Section 2310d provides certain exceptions not applicable to the facts in this case. Although the performance of architectural work incidental to the engineering work is permitted by a registered professional engineer, it is not to be construed as permitting said engineer to do the entire architectural job simply because a portion of the architectural work is incidental to the engineering. Neither the complaint nor the evidence supports a right of action for recovery within the statutory exceptions.

In the present case the plaintiff has based his claim upon architectural services rendered. He is not a licensed or registered architect in the state of Connecticut although it would appear that he is a registered professional engineer. He seeks to re-

cover on a contract for architectural services rendered in clear violation of the statutes. Such a contract is illegal and void as against public policy. A similar situation was discussed in the case of *Gionti v. Crown Motor Freight Co.*, 128 N.J.L. 407, 411, where it was said: "It is argued that as a result of the progress made in the professions of the practice of architecture and engineering, many 'overlapping functions and activities' have arisen between them, that the result has been that all 'distinctions' between them have 'passed away,' and that they 'differ in name only,' and, therefore, we should construe the respective statutes relating to these professions accordingly. However interrelated the professions and the statutes relating to them may be, the legislature has made and maintained a marked cleavage between them. It is beyond [the power of the court] to thwart that clear legislative cleavage." The court will not lend its aid in support of a contract rendered in violation of a governing statute.

It was the intention of the plaintiff to contract with the defendant to perform architectural services, and it was the intention of the defendant to hire an architect to perform these services. All true contracts grow out of the intentions of the parties to the transactions and are dictated by their mutual and accordant wills. *Gustave Fischer Co.* v. *Morrison*, 137 Conn. 399, 403.

There is no claim for a recovery in this case, nor a basis in the pleadings for a recovery, on the ground of quantum meruit or unjust enrichment. Even if this had been so or could in some way be read into the pleadings, there could be no recovery on the evidence in this case, since the illegality either in whole or in part was the thing which the party seeking to recover was to do. *McKnight* v. *Gizze*, 119 Conn. 251, 256.

Based upon the credible evidence and the law applicable thereto, all of the issues are found in favor of the defendant, for whom judgment may enter.