JAMES E. McKNIGHT ET AL. *vs.* JAMES GIZZE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Submitted on briefs October 2d—decided December 4th, 1934.

*John J. Sullivan,* for the appellant (defendant).

*John H. Cassidy* and *Frederic W. Dauch,* for the appellees (plaintiffs).

HAINES, J. The defendant Gizze was tried for murder in the first degree, and was also made defendant

in two civil actions claiming damages in the aggregate of $50,000. The plaintiffs acted as sole counsel for the defendant in all the cases. The defendant was acquitted in the murder case; one of the civil actions was disposed of in his favor upon the pleadings, and the claim for damages in the other, was reduced from $25,000 to $10,000. There was no agreement made between the parties at the time the plaintiffs were retained by the defendant, or thereafter, as to the amount which the plaintiffs would charge for their services, save that the fees would be reasonable, but the defendant delivered to them a bank book showing a deposit of $600, and assigned them a mortgage which he held for $1400, and gave them a mortgage for $10,-000 on his own real estate which was then worth $20,000.

The trial court has found that the plaintiffs spent about one fourth of their time from June 10th, 1925, to September 9th, 1925, preparing for the murder trial, and from September 9th to November 3d, both devoted all their time, including Sundays and a good part of their nights, to the same purpose. The circumstances were such that the defendant was in imminent danger of conviction for first degree murder, but he was acquitted after a trial lasting from September 24th, 1925, to November 3d, 1925, and the plaintiffs then spent ten days over a period of several months in defending the two civil actions. Thereafter the plaintiffs, in conferences extending over many weeks and into the spring of 1926, obtained an agreement between the parties for the settlement of the case. The court has found that the expenditures proved by the plaintiffs amounted to $927, and that the value of the plaintiffs' services was $10,000, making $10,927, from which was deducted the $2000 first turned over to

them, and rendered judgment in their favor for $8927, and costs.

The appellant-defendant attacks seventeen of the thirty-seven paragraphs of the finding and seeks the addition of seven paragraphs of the draft-finding. Of the latter, some are wholly immaterial to the issues before us and the remainder are based upon conflicting testimony, and we cannot therefore accept them. We do not discover any finding which is not distinctly supported by the evidence save, perhaps, that which says that there was no actual fraud or intent to defraud in procuring the mortgage, and that any duress or coercion was constructive only. The details of that transaction were referred to only incidentally in the testimony given in the present case. It is true that the file and judgment in a former case brought to foreclose the mortgage, in which judgment was rendered for the defendant, were introduced as an exhibit in this case, entitling the court to examine the entire record in the files of that court to determine the scope of the judgment.

The proper procedure for the defense was to plead that judgment by way of estoppel, but it was not done. Practice Book, § 104. However, no objection was made to its admission and since the finding must stand if at all upon the record of the former case, we have examined it. It shows that at the time the mortgage was given, the defendant, an elderly foreigner, ignorant and uneducated, under arrest charged with first degree murder, with little if any opportunity to communicate with his family or friends, was in a nervous condition of terror and apprehension, and under these circumstances gave the mortgage at the solicitation of his attorneys. An appeal from the judgment was taken to this court and, in addition to sustaining it, we pointed out that a court of equity would scrutinize

such a transaction between a client and his attorney with great care and that if it was doubtful whether the utmost good faith and mutual understanding had been shown, such doubt would be resolved in favor of the client; we held that under the circumstances disclosed by that case, the plaintiffs were not entitled to foreclose the mortgage. *McKnight* v. *Gizze,* 107 Conn. 229, 140 Atl. 116. While we sustained the finding of the court that the transaction was tainted with coercion and fraud, these words were not used in the sense of actual fraud practiced or duress exerted upon the defendant, neither of which were found by the trial court to have existed, but in the sense that, under the circumstances, the plaintiffs had taken an unfair and inequitable advantage of the defendant, such as the law would not sanction. On the basis of that decision, the trial court in this case has found that "there was no actual fraud or bad faith or intent to defraud on the part of the plaintiffs, . . . and any duress or coercion involved in the transaction was constructive in character, resulting from the respective situations of the parties." This interpretation of the decision in that case was substantially correct.

It appears from the foregoing recital of the facts that there was no agreement made as to the amount of compensation the plaintiffs were to receive and the contention of the defendant on this appeal that the result of the foreclosure action was a "denial of compensation" is unwarranted. Had the mortgage been foreclosed and the proceeds put into the hands of the plaintiffs, the amount due them for their services and expenses would still have remained to be determined. The two contracts were separate and distinct; the contract for services for reasonable fees, was one of a strictly legal and valid character; that for security for those fees was invalid. This distinction was recognized

by *Judge Marvin* in his memorandum of decision in the foreclosure action, where he says: "I like to believe, and do believe, the mortgage was made to protect the plaintiffs in securing compensation. . . . Nothing in this decision . . . is to be interpreted as expressing any opinion as to the extent and value of the services rendered. . . ." Such extent and value have been determined by the trial court in the present action as follows: "The plaintiffs diligently, faithfully and successfully rendered services in the protection of Gizze's interests. They practically gave up their practice entirely to devote themselves exclusively to their client's business, with that energy, concentration and sustained effort, over a long period, characteristic of the best . . . lawyers," and concluding: "For such services they are entitled to the compensation hereinbefore found to be justly due to them." That amount was fixed at $10,000 and there was expert testimony offered by the plaintiffs which gave that as fair compensation, while no opposing expert testimony was offered by the defendant.

Upon the record as it now stands, we may state the present question as follows: Where an attorney, no actual fraud or duress being shown, procures from an ignorant and frightened client, a mortgage to ensure the payment of his fees for future services to an amount to be later determined, and thereafter the mortgage is judicially declared invalid, can he recover on a quantum meruit for the reasonable value of such services?

The defendant relies in part upon *Brackett* v. *Norton*, 4 Conn. 517. This was an action by an attorney to recover for services. The plaintiff, when acting as counsel for the defendant, had obtained a judgment in favor of the latter and thereafter, by his fraudulent conduct, defeated a collection on the execution. The defendant's claim as stated by the court was that the

plaintiff "having violated his duty by the perpetration of a fraud, and by this act occasioned to the defendant the loss of his debt, he now demands remuneration for his faithless services." It was held that such conduct required that the judgment of the lower court in favor of the plaintiff be set aside. There was a wilful fraud in carrying out the contract of employment into which the attorney had entered, disloyalty to his client and bad faith in the performance of the attorney's professional services, which merited the condemnation and deprivation of fees which followed. This decision furnishes no precedent for the case before us. Here the professional services in behalf of the client were faithfully performed, and even in taking the mortgage, no actual fraud, dishonesty or disloyalty to the client disclosed. Though the facts are not exactly analogous, the rule is well stated in *Baca* v. *Padilla*, 26 N. M. 223, 230, 190 Pac. 730, 11 A. L. R. 1188: "When the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then there can be no recovery upon a quantum meruit. But where the illegality was not in what the plaintiff was to do but in the manner in which he was to be compensated for doing the legal thing, then he can recover upon a quantum meruit for the reasonable value of his services."

In *Boyles* v. *Leonardo*, 65 Cal. App. 315, 224 Pac. 115, it appeared that in contemplation of a divorce action the client agreed to pay her attorney $5000. The action was brought, but later withdrawn in favor of a property settlement between the husband and wife. The attorney sued on the contract and the defendant contested on the ground of (1) no consideration, and (2) fraud in attempting to overreach the client. The court held that even though these defenses

were sustained, the attorney would nevertheless be entitled to reasonable compensation for his services.

In *Dodge's Admr.* v. *Foulks,* 50 Ky. (11 B. Monroe) 178, a deed of land was given, said to be for future legal services. Afterward the attorneys sold the land at a profit and the grantor sued to recover the proceeds of that sale. The court said that the consideration for the original debt was feigned and anomalous and savored of a device to obtain unconscionable fees and added: "To relieve the client under such circumstances is an established ground of equitable interposition," and at the same time remarked that care should be taken in such cases to see that the attorney is not deprived of a reasonable fee for his services.

In *Turnbull* v. *Banks,* 32 App. Div. 508, 48 N. Y. Sup. 40, an action which sought to deprive a woman of all her real estate, she gave her attorney a mortgage of $1500 for legal services to defend the suit, not knowing she had a good defense; the attorney did know. Upon the trial he obtained a clear title for her, and thereupon sought to foreclose his mortgage. It was decided that when the mortgage was given the parties were not on equal terms by reason of her ignorance, and the contract made with her attorney was condemned; but the court held that the attorney was entitled to reasonable compensation which was fixed at $500.

A similar rule has been generally supported in cases where the original contract for services was held void as against public policy, and the authorities are collated and discussed in 2 L. R. A. (N. S.) 261, 38 L. R. A. (N. S.) 1202, and 30 A. L. R. 188, 191.

An attorney is rightly held to the highest degree of honesty and loyalty to his client, and if legal services are rendered in complete fulfilment of that obligation, neither reason nor justice requires that he be penalized

by denying him full compensation even though a separate contract in relation thereto is found to be invalid, certainly where no wrongful intent is shown.

In the present case no dishonest purpose or disloyalty to the client was established, but it does conclusively appear that his interests were defended loyally, earnestly and successfully by the plaintiffs, and they are entitled to reasonable compensation as the trial court decreed.

There is no error.

In this opinion the other judges concurred.