# J. WILLIAM GAGNE, JR. *v.* ENRICO VACCARO
## (SC 16351)

Katz, Sullivan, Vertefeuille, Zarella and Dranginis, Js.*

Argued November 30, 2000—officially released March 6, 2001

* The listing of justices reflects their seniority status on this court as of the date of argument.

*James F. Stapleton*, with whom was *Richard P. Colbert*, for the appellant (plaintiff).

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellee (defendant).

*Opinion*

KATZ, J. The principal issue in this appeal is whether, in the absence of a written contingency fee agreement between an attorney and his client, as required by General Statutes § 52-251c,[1] recovery by that attorney

[1] General Statutes § 52-251c provides in relevant part: "Limitation on attorney contingency fees in personal injury, wrongful death and property damage actions. (a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement. . . ."

Rule 1.5 (c) of the Rules of Professional Conduct provides: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subsection (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

against a successor attorney should be permitted on the basis of quantum meruit or unjust enrichment, regardless of whether bad faith by the successor attorney or the client's waiver of § 52-251c has been established. We conclude that, under the facts and circumstances of this case, the failure by the plaintiff, J. William Gagne, Jr., to comply with § 52-251c did not preclude him from recovering under the doctrines of quantum meruit or unjust enrichment from the defendant, Enrico Vaccaro, the successor attorney, a reasonable fee for services he had rendered on behalf of his former client. Accordingly, we reverse the judgment of the trial court, which set aside a jury verdict for Gagne and found in favor of Vaccaro, and we reinstate the jury's award of damages in the amount of $328,469.14.

The evidence at trial established the following facts. In the fall of 1989, Richard Aldrich was injured while working for RK Contractors on construction of the Fusco Building, Goodwin Plaza, in Hartford. Shortly thereafter, while Aldrich was in the hospital, Gagne, who practiced an extensive amount of labor law, was approached at a carpenter's union meeting by an agent who asked him to visit Aldrich. During the course of his visit with Aldrich, Gagne agreed to represent him in the personal injury action arising from the accident. Although they discussed terms of the contract and agreed to a contingency fee of 25 percent, Gagne did not reduce the agreement to writing.

Over the next four years, Gagne worked on the case and ultimately engaged in settlement negotiations with Herbert Lustig, the attorney representing the primary and secondary insurers of RK Contractors. Lustig proposed a structured settlement of the claim totaling $2,307,000 over Aldrich's lifetime, which had a guaranteed present value of $1,585,000. Following these settlement negotiations, Gagne flew to Aldrich's home in Colorado to discuss the proposal. Upon Gagne's return,

he instructed his associate, Harry Elliott, to follow up on a variety of matters related to the settlement proposal, including confirming the amount of attorney's fees allowable under § 52-251c.

Approximately one month before the meeting in Colorado, unbeknownst to Gagne, Aldrich had contacted Vaccaro, an attorney who previously had represented Aldrich's son in an unrelated case. Aldrich had been unhappy that his personal injury case arising out of the construction accident had not progressed further. Following the meeting in Colorado with Gagne, Aldrich sent Vaccaro the settlement proposal given to him by Gagne. During a subsequent conversation, Vaccaro told Aldrich that he could get him more money than the settlement proposal offered by Gagne. At some point in one of their conversations, Vaccaro asked Aldrich whether he had entered into a written fee agreement with Gagne. Aldrich informed him that his agreement with Gagne had been oral. Vaccaro then promised Aldrich that he would charge him a contingency fee of only 10 percent upon transfer of the case to him. When he ultimately retained Vaccaro, Aldrich told him that Gagne had done a great deal of work on the case and that he was hiring Vaccaro on the condition that Vaccaro would agree to pay Gagne his fair share of the attorney's fee earned in the case. In fact, Aldrich would not have agreed to hire Vaccaro had Vaccaro not agreed to that condition. Vaccaro acquiesced, and Aldrich discharged Gagne and retained Vaccaro.

On January 18, 1994, in a letter requesting the file from Gagne, Vaccaro wrote: "I will either agree with your claims and forward to you a check in payment thereof when the above matters are resolved or will hold any fee in escrow pending a determination of the amount due to you." Gagne turned the file over to Vaccaro, who subsequently made a single settlement demand in the amount of $1,750,000. The demand was

accepted and on April 25, 1994, the case was settled. Vaccaro's file in connection with his representation of Aldrich consisted of an appearance, a withdrawal, two motions for extension of time, correspondence notifying other parties in the case that he was Aldrich's successor counsel, a few letters to physicians requesting updated medical information and one letter to counsel for the workers' compensation carrier. He did not conduct any factual investigation, hire any investigators, retain any experts or take any depositions. Gagne had performed 85 to 90 percent of the work on the case.

After Gagne learned that the case had settled, he attempted to arrive at a consensual resolution of the fee arrangement with Vaccaro. Gagne also proposed, albeit unsuccessfully, that the fee dispute be resolved by arbitration before the Connecticut Bar Association Lawyer-to-Lawyer Dispute Resolution Program.

Thereafter, Gagne brought the present action, claiming that: (1) he was the third party beneficiary of a contract between Aldrich and Vaccaro, thereby obligating Vaccaro to pay him a portion of the attorney's fees recovered in the personal injury action brought on behalf of Aldrich; (2) by taking over the Aldrich case, Vaccaro also had implicitly assumed all of Aldrich's obligations to compensate and reimburse Gagne for his fees and expenses from the total fees paid to him by Aldrich; (3) Vaccaro had agreed orally and in writing that he would reimburse Gagne for the disbursements he had incurred and that he would satisfy the contingent compensation due Gagne out of any recovery realized in Aldrich's personal injury claim; (4) Vaccaro, who had received a substantial benefit from the work Gagne had performed, unjustly failed to pay him for that benefit to Gagne's detriment; and (5) Vaccaro violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

On or about August 8, 1996, Vaccaro filed a motion for summary judgment, claiming, inter alia, that Gagne's claims were barred on public policy grounds. Specifically, relying on *Alan E. Silver, P.C. v. Jacobs*, 43 Conn. App. 184, 602 A.2d 551, cert. denied, 239 Conn. 938, 684 A.2d 708 (1996), decided well after the events in the present case had transpired, Vaccaro claimed that Gagne's failure to obtain a written fee agreement as required under § 52-251c precluded him from recovering his fee. In opposition to the motion, Gagne advanced four grounds under which he claimed recovery despite his noncompliance with § 52-251c: (1) *Alan E. Silver, P.C.*, had been decided improperly; (2) that case was distinguishable; (3) Aldrich waived the protection of § 52-251c; and (4) Vaccaro's bad faith actions precluded him from relying on Gagne's noncompliance with § 52-251c as a defense. The trial court, *Licari, J.*, in ruling on the motion for summary judgment, recognized a bad faith exception to § 52-251c. Specifically, the trial court determined that when a successor attorney has acted in bad faith, using the original attorney's noncompliance with the statute to avoid compensating him, the original attorney is not barred from recovering his fee, despite his noncompliance with § 52-251c. The trial court also recognized that the client may waive the protection of § 52-251c. Because there were issues of material fact raised in connection with those two defenses by Gagne, the trial court denied Vaccaro's motion for summary judgment.[2]

[2] With regard to Gagne's third party beneficiary claim, the trial court also distinguished *Alan E. Silver, P.C. v. Jacobs*, supra, 43 Conn. App. 184. In the present case, Gagne made a claim as a third party beneficiary to the written contingency fee agreement between Aldrich and Vaccaro, whereas in *Alan E. Silver, P.C.*, the agreement that the court held to be unenforceable was an agreement between the original and the successor attorneys obligating the successor attorney to pay the original attorney those amounts that the clients were obligated to pay the original attorney, which, because of his noncompliance with § 52-251c, was nothing.

Thereafter, the case was tried to a jury, which found in favor of Gagne on all five counts of his complaint and awarded him damages in the amount of $328,469.14.[3] Pursuant to Practice Book § 16-37,[4] Vaccaro then moved the trial court to set aside the verdict and render judgment for him notwithstanding the verdict, claiming that, in the absence of a written contingency fee agreement, Gagne could not recover any attorney's fees. In addition, Vaccaro contended that the evidence had been insufficient on the issue of his alleged bad faith, as well as on Gagne's claims regarding breach of contract, Gagne's status as a third party beneficiary and Vaccaro's alleged CUTPA violation.[5]

---

[3] Over Gagne's objection, the trial court instructed the jury, and provided an interrogatory in accordance with the instruction, that, as a threshold issue, the jury was required to find that Vaccaro had acted in bad faith in his dealings with Gagne before it could consider any of the five counts of the complaint. In other words, if the jury determined that Vaccaro had not acted in bad faith, then it was to return a verdict for Vaccaro on all five counts. The response to the first interrogatory reflects the jury's determination that Vaccaro had acted in bad faith.

[4] Practice Book § 16-37 provides: "Reservation of Decision on Motion for Directed Verdict

"Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his or her motion for a directed verdict within the aforesaid time after the jury have been discharged from consideration of the case. If a verdict was returned the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the judicial authority may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

[5] Vaccaro also filed a motion in arrest of judgment on the CUTPA count. In light of its decision to set aside the verdict on all counts and render

The trial court granted Vaccaro's motion, concluding that the evidence did not support a finding of bad faith on his part.[6] Accordingly, the trial court set aside the judgment and rendered judgment for Vaccaro. Gagne appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[7]

On appeal, Gagne raises several issues addressing the trial court's decision granting Vaccaro's motion for judgment notwithstanding the verdict.[8] In addition to

judgment for Vaccaro, the trial court found it unnecessary to act on that motion.

[6] In its decision to set aside the verdict and render judgment for Vaccaro, regarding the first count of the complaint in which Gagne claimed he was the third party beneficiary of a contract between Aldrich and Vaccaro, the trial court determined that the evidence reasonably did not support a finding that there had been an enforceable agreement between Aldrich and Vaccaro whereby Vaccaro agreed to pay a fee to Gagne. The trial court concluded that the statement by Aldrich that Gagne's fee " 'had to be taken care of' " was insufficient as a matter of law to form a binding contract. The trial court did not consider Aldrich's testimony that Vaccaro had agreed to do just that. Although that testimony was brought to the trial court's attention as part of Gagne's motion for rectification filed on February 9, 2000, the trial court deemed no further action necessary.

[7] General Statutes § 51-199 (c) provides: "The Supreme Court may transfer to itself a cause in the Appellate Court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the Constitution, the Supreme Court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the Appellate Court. The court to which a cause is transferred has jurisdiction."

Practice Book § 65-1 provides: "Transfer of Cases by Supreme Court

"When, pursuant to General Statutes § 51-199 (c), the supreme court (1) transfers to itself a cause in the appellate court, or (2) transfers a cause or a class of causes from itself to the appellate court, the appellate clerk shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred. There shall be no fee on such transfer. The appellate clerk may require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred, for example, supply the court with additional copies of the record and the briefs."

[8] Gagne claims that the trial court improperly: (1) required him to prove bad faith as a threshold issue to recovery; (2) allowed Vaccaro to assert as

his response defending the actions of the trial court, Vaccaro asserts numerous claims for consideration, should we agree with Gagne and order a new trial.[9] This case, however, distills to one basic question: whether, in

a defense the lack of his written fee agreement with Aldrich; (3) concluded that the evidence of Vaccaro's bad faith was insufficient; and (4) denied his ability to recover under the doctrine of quantum meruit or unjust enrichment.

[9] Vaccaro claims that, in the event that we determine that the trial court improperly granted his motion for judgment notwithstanding the verdict and we order a new trial, we should nevertheless dismiss the CUTPA count. Specifically, he contends that: (1) the trial court did not have jurisdiction to reconsider the CUTPA count because that count, filed after the statute of limitations had run, did not relate back to the original complaint; (2) Gagne had failed to prove a CUTPA violation at the first trial; and (3) a single act cannot support a CUTPA claim. In addition, Vaccaro contends that we should nevertheless affirm the trial court's decision to set aside the verdict and order a new trial with instructions to the trial court that bad faith must be proven, if at all, by clear and convincing evidence.

Taking his last claim first, Vaccaro contends that if we conclude that the trial court improperly granted his motion for judgment notwithstanding the verdict, we "must review the [trial court's] grant of the motion to set aside under a more lenient standard," and affirm the granting of that motion and order a new trial. In this case, the basis for the trial court's decisions as to both the motion for judgment notwithstanding the verdict and the motion to set aside the verdict was its legal determination that proof of Vaccaro's bad faith was required and its further conclusion that it had not been demonstrated. Because we disagree with the trial court's determination that bad faith was required in order for Gagne to recover in quantum meruit or unjust enrichment, there is no basis upon which to order a new trial on that count.

With respect to Vaccaro's claims regarding the CUTPA count, Gagne contends that the only claim properly preserved is the first one, namely, whether the trial court had jurisdiction to consider the CUTPA count. This claim had been raised by Vaccaro in a motion to dismiss, dated September 10, 1999, and was rejected by the trial court on September 13, 1999.

According to Gagne, Vaccaro's claim that a single act cannot form the basis of a CUTPA violation was raised for the first time in his brief to this court and therefore was not preserved properly for appellate review. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 49, 717 A.2d 77 (1998) ("to permit the appellant first to raise posttrial an issue that arose during the course of the trial would circumvent the policy underlying the requirement of timely preservation of issues"). We disagree. Our review of the record demonstrates that Vaccaro made this claim to the trial court before the jury began its deliberations.

the absence of a written contingency fee agreement between an attorney and his client, as required by § 52-251c, recovery by that attorney against a successor attorney should be permitted on the basis of quantum meruit or unjust enrichment, regardless of whether bad faith or the client's waiver of § 52-251c has been established.[10] With regard to this issue, Vaccaro claims that because Gagne had rendered legal services pursuant to an oral agreement,[11] in violation of the Rules of Profes-

Although the charging conference was not recorded, following the jury charge, Vaccaro expressly objected to the application of CUTPA to a single act.

Finally, Gagne argues that Vaccaro's claim regarding sufficiency of the evidence was raised for the first time in a series of postverdict motions. Our review of the record reveals that Vaccaro filed a motion in limine on September 14, 1999, which was denied the same day. That motion merely sought to preclude the introduction of any evidence relating to a CUTPA violation on the ground that Gagne's complaint had failed to put Vaccaro on notice of what evidence he intended to introduce. Once again following the charge to the jury, however, Vaccaro argued to the trial court that his conduct had been unconnected to the business of the law practice and that there had been no evidence of unfair or deceptive acts. Accordingly, Vaccaro's claims have been preserved adequately for appellate review.

Nevertheless, we do not reach Vaccaro's alternate grounds for sustaining the judgment rendered in his favor on the CUTPA count. Although at trial Gagne raised the issue of whether bad faith was a threshold requirement to a recovery on several of the counts, he did not raise or brief that issue independently as it pertains to the CUTPA count on appeal. In his brief addressing the statement of issues before this court, Gagne claimed: "The trial court erred in requiring [Gagne] to prove bad faith as a 'threshold issue' to a recovery on [his] claims of an independent agreement and a third party beneficiary agreement." Therefore, we do not offer an opinion on that issue and, accordingly, do not extend our decision reversing the judgment of the trial court to the CUTPA count. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 38–39.

[10] Although the fourth count of Gagne's complaint alleges unjust enrichment, and strictly speaking, it is on that count that we direct the trial court to render judgment in his favor, our decision about whether an attorney, who has failed to comply with § 52-251c, must prove bad faith on the part of the successor attorney in order to recover his fee pertains to claims under the doctrines of quantum meruit *and* unjust enrichment.

[11] Because Vaccaro was not a party to the agreement between Aldrich and Gagne, Gagne claims that Vaccaro does not have standing to raise a

sional Conduct and § 52-251c, Gagne is barred from recovering against him. Specifically, Vaccaro contends that, absent an express waiver or bad faith, the oral agreement is void as against public policy and thus, unenforceable. Essentially, we must decide whether to invoke a per se rule that would preclude recovery based on quantum meruit or unjust enrichment even in the absence of bad faith or a waiver by the client of the protections of § 52-251c.[12] Additional facts will be presented as necessary.

We begin with a brief discussion of the well settled principles of law that guide our decision. The standard of review applied to directed verdicts is clear. A directed verdict is justified if, on the evidence the jury reasonably and legally could not have reached any other conclusion. *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986). "In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff." Id.; see *Santopietro* v. *New Haven*, 239 Conn. 207, 222, 682 A.2d 106 (1996). While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven; *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 529, 562 A.2d 1100 (1989); it may not resort to mere conjecture and speculation. *Burke* v. *West Hartford*, 147 Conn. 149, 151–52, 157 A.2d 757 (1960). The standard of review governing a motion for judgment notwithstanding the verdict is the same because a "motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict." *Salaman* v. *Waterbury*, 44 Conn.

---

violation of § 52-251c as a defense. We disagree. See *Alan E. Silver, P.C.* v. *Jacobs*, supra, 43 Conn. App. 188–89.

[12] The trial court rejected the jury's finding as to bad faith. Because we conclude that proof of bad faith was not *required* in order for Gagne to have recovered under the doctrine of unjust enrichment, we do not address that decision as part of our resolution of this issue.

App. 211, 216, 687 A.2d 1318 (1997), rev'd on other grounds, 246 Conn. 298, 717 A.2d 161 (1998).

We turn next to the doctrines of quantum meruit and unjust enrichment. See footnote 10 of this opinion. Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. *Fischer Co.* v. *Morrison*, 137 Conn. 399, 403, 78 A.2d 242 (1951). Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. *Fischer* v. *Kennedy*, 106 Conn. 484, 492, 138 A. 503 (1927); see also *Sidney* v. *DeVries*, 215 Conn. 350, 351–52 n.1, 575 A.2d 228 (1990) (quantum meruit and unjust enrichment are common-law principles of restitution; both are noncontractual means of recovery without valid contract). Quantum meruit literally means " 'as much as he has deserved' . . . ." Black's Law Dictionary (7th Ed. 1999). Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services. Unjust enrichment applies whenever "justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract . . . ." 12 S. Williston, Contracts (3d Ed. 1970) § 1479, p. 272. Indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment. Not unlike quantum meruit, it is a doctrine based on the postulate that it is contrary to equity and fairness for a defendant to retain a benefit at the expense of the plaintiff. See *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985).

We next direct our attention to the pertinent statutory and regulatory provisions that control this appeal. Our law is clear. When an attorney undertakes to represent a client in a personal injury action, the attorney and

his client "may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) [d]amages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement." General Statutes § 52-251c (a).

Rule 1.5 (c) of the Rules of Professional Conduct provides in relevant part: "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. . . ."

Section 52-251c "was intended to regulate the attorney-client relationship in order to protect plaintiffs from excessive legal fees." *Berry* v. *Loiseau*, 223 Conn. 786, 830 n.22, 614 A.2d 414 (1992). That having been said, the statute is silent on the issue before us in this appeal: what recovery, if any, is available against a successor attorney when the initial attorney did not comply with the Rules of Professional Conduct. When the legislature amended § 52-251c to incorporate the Rules of Professional Conduct, its intent was not telegraphed. See Public Acts 1987, No. 87-227, § 1. The statute does not contain any further language regarding the purpose or effect of the amendment, nor is the legislative history particularly expressive of its intent. The limited comments regarding § 52-251c indicate that the legislature was aware that "[f]rom time to time, [the] rules may change," and that the recent amendment requiring contingency fee agreements to be in writing was adopted by the "professional association" itself. 30 H.R. Proc.,

Pt. 16, 1987 Sess., pp. 5653–54, remarks of Representative Richard Tulisano. The recognition that judges and attorneys make their own rules, which they unilaterally change from time to time, strongly suggests that the legislative intent in incorporating the Rules of Professional Conduct was not to establish any additional requirements, outside of what the "professional association" might establish.

The Rules of Professional Conduct caution those who seek to rely on their provisions. They "provide a framework for the ethical practice of law. . . . Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty."[13] Rules of Professional Conduct, scope, p. 3.

Gagne contends that, in light of the language included in the scope of the Rules of Professional Conduct, and because the legislature did not provide, expressly or

[13] "The Rules contained in the Rules of Professional Conduct as adopted by the American Bar Association and as recommended, with revisions, by the Connecticut Bar Association for adoption were approved by the judges of the superior court, effective October 1, 1986." Rules of Professional Conduct, preface, p. 1.

implicitly, for a third party, such as Vaccaro, to void or otherwise bar an attorney from receiving a fee for the work he performed, this court should not interpolate such a remedy into a violation of § 52-251c. Gagne's approach is consistent with our treatment of other consumer oriented statutes. For example, in *New England Land Co., Ltd.* v. *DeMarkey*, 213 Conn. 612, 623, 569 A.2d 1098 (1990), this court recognized that in enacting the statutory provisions regarding real estate brokers commissions; see General Statutes § 20-325a et seq.; the legislature expressly provided that a real estate broker is prohibited from commencing an action to recover for services when the broker's contract is in violation of those provisions. Similarly, in deciding whether a contractor could recover from a homeowner for work performed, despite the contractor's noncompliance with the Home Improvement Act; General Statutes § 20-418 et seq.; this court focused on an explicit statement in that act that a violation of the provisions renders the contract invalid, and concluded that the legislature intended to bar recovery in quantum meruit. See *Barrett Builders* v. *Miller*, 215 Conn. 316, 321, 576 A.2d 455 (1990) (absent proof of bad faith on part of homeowner, General Statutes § 20-429 permits no recovery by contractor who has failed to comply with its requirements); see also *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 237 Conn. 123, 134–35, 676 A.2d 369 (1996) (noting explicit textual differences in Home Improvement Act in concluding that Common Interest Ownership Act; General Statutes § 47-200 et seq.; does not provide unrestricted right of rescission as remedy for violation).

Although this court has not had the opportunity to address the issue presently on appeal, as we have indicated previously, the Appellate Court has spoken on

the subject.[14] In *Alan E. Silver, P.C.* v. *Jacobs,* supra, 43 Conn. App. 188–89, the court concluded that contingency fee agreements must be in writing and that an attorney's failure to commit such an agreement to writing precludes him from recovering the value of his services from a successor attorney. Although the attorney in that case could not enforce his claim for fees against the client because there had been no written agreement, he argued that the successor attorney was not within the class to be protected by § 52-251c, and thus could not invoke its protection. Id., 190. The Appellate Court disagreed, concluding that "[w]here a law is passed for the protection of the public, we will not undermine the remedial purposes of the statute . . . ." Id.

[14] The closest case that our research has led us to is *McKnight* v. *Gizze,* 119 Conn. 251, 255, 175 A. 676 (1934), wherein the court answered the following question: "Where an attorney, no actual fraud or duress being shown, procures from an ignorant and frightened client, a mortgage to ensure the payment of his fees for future services to an amount to be later determined, and thereafter the mortgage is judicially declared invalid, can he recover on a quantum meruit for the reasonable value of such services?"

Relying on the fact that "the professional services in behalf of the client were faithfully performed, and even in taking the mortgage, no actual fraud, dishonesty or disloyalty to the client [was] disclosed"; id., 256; the court concluded that "[w]hen the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then there can be no recovery upon a quantum meruit. But where the illegality was not in what the plaintiff was to do but in the manner in which he was to be compensated for doing the legal thing, then he can recover upon a quantum meruit for the reasonable value of his services." (Internal quotation marks omitted.) Id.

"An attorney is rightly held to the highest degree of honesty and loyalty to his client, and if legal services are rendered in complete fulfilment of that obligation, neither reason nor justice requires that he be penalized by denying him full compensation even though a separate contract in relation thereto is found to be invalid, certainly where no wrongful intent is shown.

"In the present case no dishonest purpose or disloyalty to the client was established, but it does conclusively appear that his interests were defended loyally, earnestly and successfully by the plaintiffs, and they are entitled to reasonable compensation as the trial court decreed." Id., 257–58.

Because the present case before us involves a claim by one attorney against his successor, *McKnight* is not controlling. That decision, however, differentiating between the services performed and the method of compensation, is informative.

Relying on the cases decided by this court, in which the court has determined that a contractor cannot recover in quantum meruit from a homeowner when he has failed to comply with the written contract requirement in § 20-429 of the Home Improvement Act; see, e.g., *Barrett Builders* v. *Miller*, supra, 215 Conn. 325–26; the majority in *Alan E. Silver, P.C.*, imposed a per se rule barring recovery from a successor attorney of fees for failure to secure a written fee agreement pursuant to § 52-251c. The Appellate Court concluded that it was more urgent to protect the public from attorneys than to protect attorneys from successor attorneys. *Alan E. Silver, P.C.* v. *Jacobs*, supra, 43 Conn. App. 190.

*Barrett Builders*, however, involved a situation wherein the interests of the plaintiff contractor and the consumer were in direct conflict. That clearly is not the case here. The ability of an attorney to recover from a successor attorney does not endanger the important public policy of protecting the public from excessive legal fees, particularly when "the plaintiff's agreement with the defendant is a separate transaction from the plaintiff's agreement with the [client]." Id.; see also *Mozzochi* v. *Beck*, 204 Conn. 490, 501, 529 A.2d 171 (1987) (rejecting legal malpractice claim by third party in absence of any express indication, in text or history of Code of Professional Responsibility, now Rules of Professional Conduct, indicating intent to establish rules giving rise to such action).

We agree that, "by enacting § 52-251c without qualification, the legislature has imposed its view that it is more urgent to protect clients from attorneys than to protect attorneys from successor attorneys." *Alan E. Silver, P.C.* v. *Jacobs*, supra, 43 Conn. App. 192. We disagree, however, that the doctrine of quantum meruit or unjust enrichment, as between an attorney and his

successor, properly cannot be invoked to protect both interests.

Rather, we are persuaded by Judge Lavery's dissenting opinion in *Alan E. Silver, P.C.*, in which he took issue with the majority's failure to cite any substantive applicable law, statutory or common, compelling the conclusion that a violation of § 52-251c is an outright bar to an attorney's action in quantum meruit or unjust enrichment against a successor attorney. Id., 194. Judge Lavery noted: "The majority states that, under equitable quasi-contract principles, it would be 'unjust to permit an attorney to avoid th[e] public policy by splitting a fee with a successor attorney.' Such a construction suggests that the majority has adopted a per se rule, foreclosing recovery from a successor attorney under any set of circumstances, as long as the attorney failed to have the client sign a written contract. I believe that the equitable contract principles on which we should focus are those that have traditionally been the basis for an award under the restitutionary theories of quantum meruit and unjust enrichment: only those circumstances that existed between the two pertinent parties, here the plaintiff and the defendant. If the trial court limited its review of this matter to the transaction between the parties, then it would have had to determine whether the defendant benefited from the plaintiff's work product." Id., 194–95 (*Lavery, J.*, dissenting). The jury in the present case answered the pertinent questions regarding the value of the services Gagne had conferred upon Aldrich and the extent to which Vaccaro had benefited from those services, and the trial court's judgment notwithstanding the verdict left those findings intact.

We recognize the broad general doctrine founded on the maxim ex turpi causa non oritur actio—no cause of action can arise out of an illegal or immoral inducement. We also acknowledge that a court should not

allow itself to be made the instrument of enforcing obligations arising out of an agreement that is against public policy, either in law or in equity.[15] In this case, however, the party seeking to hide behind the violation of § 52-251c, Vaccaro, is a third party who holds the fruits of the product of the oral contract between Aldrich and Gagne. In our view, it would be a violation of our equity jurisprudence to allow Vaccaro to retain those fruits. Accordingly, we reverse that part of the decision in *Alan E. Silver, P.C.*, which held that, in the absence of a written fee agreement between an attorney and the client, an attorney who has worked on a personal injury case cannot, under the doctrine of quantum meruit or unjust enrichment, collect his fee from a successor attorney after settlement.[16] Id., 190–91.

As we have recognized often, "[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood*, 146 Conn. 273, 278, 150 A.2d 215 [1959]; *Schleicher* v. *Schleicher*, 120 Conn. 528, 534, 182 A. 162 [1935]. *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216 A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes neces-

---

[15] Although that rule is not absolute; see J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 22-1 et seq.; we need not address its various permutations or exceptions.

[16] Accordingly, we also reverse the holdings in *Perkins & Mario* v. *Annunziata*, 45 Conn. App. 237, 241–42, 694 A.2d 1388 (1997), and *Brunswick* v. *Safeco Ins. Co.*, 48 Conn. App. 699, 705, 711 A.2d 1202, cert. denied, 247 Conn. 923, 719 A.2d 1168 (1998), wherein the Appellate Court reaffirmed its holding in *Alan E. Silver, P.C.*, that an attorney who worked on a personal injury case could not collect his fee from a successor attorney after settlement in the absence of a written fee agreement between the attorney and the client.

sary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. *Cecio Bros., Inc.* v. *Greenwich,* [156 Conn. 561, 564–65, 244 A.2d 404 (1968)]. . . . *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971); *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.,* 231 Conn. 276, 282, 649 A.2d 518 (1994)." (Internal quotation marks omitted.) *Meaney* v. *Connecticut Hospital Assn., Inc.,* 250 Conn. 500, 511–12, 735 A.2d 813 (1999).

Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff. *National CSS, Inc.* v. *Stamford,* supra, 195 Conn. 597. The doctrine's three basic requirements are that (1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment. *Bolmer* v. *Kocet,* 6 Conn. App. 595, 612–13, 507 A.2d 129 (1986). All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine. *Meaney* v. *Connecticut Hospital Assn., Inc.,* supra, 250 Conn. 511–12. Accordingly, in the present case, Gagne was required to prove in the trial court that Vaccaro had received a benefit at his expense under circumstances that would otherwise make it unjust for Vaccaro to retain the benefit. This highly fact-intensive inquiry was conducted by the jury in this case, and, as evidenced by its answers to the interrogatories, was determined in Gagne's favor.

Nevertheless, the trial court granted Vaccaro's motion for judgment notwithstanding the verdict based upon its conclusion that the evidence of bad faith had been insufficient. While bad faith indeed may have been

relevant to the inquiry of whether justice *required* recovery, we conclude that Gagne was *not* compelled to establish bad faith in order to have recovered in unjust enrichment against Vaccaro.[17]

In *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 253, 720 A.2d 879 (1998), we identified the distinction between a dispute involving a homeowner and a home improvement contractor and a dispute between the homeowner and his insurer. We recognized that the purpose of the Home Improvement Act is "to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from substantial work by an unscrupulous contractor. *Habetz* v. *Condon*, 224 Conn. 231, 239, 618 A.2d 501 (1992) . . . [and] that compliance with the act is mandatory in order for a contractor to recover on a home improvement contract. *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 680, 657 A.2d 1087 (1995)." (Internal quotation marks omitted.) *Northrop* v. *Allstate Ins. Co.*, supra, 253. Nevertheless, we concluded, "[t]hat does not mean, however, that the noncomplying contractor is not entitled to payment when the homeowner, for whose benefit the act's prophylactic provisions were enacted, does not seek the protection of the act, and agrees that the contractor has done the work and should be paid. The act is for the benefit of the consumer, and compliance with its terms may be waived by the consumer, either explicitly or by nonassertion. Thus, the defendant, as the plaintiffs' insurer, cannot interpose noncompliance with the act as a defense to its own insured's claim for replacement cost coverage." Id.

Similarly, in the present case, as evidenced by the interrogatories, the jury reasonably found that Aldrich,

---

[17] Therefore, we need not decide whether the trial court properly concluded that Gagne had not proven that Vaccaro had acted in bad faith in his dealings with Gagne in order to resolve this claim. See footnote 12 of this opinion.

for whose benefit the pertinent provisions existed, intended for Gagne to be paid a portion of the attorney's fees for the services he had rendered on Aldrich's behalf.[18] Moreover, no dishonest purpose or disloyalty to Aldrich was established. No serious moral turpitude was found to exist. Rather, as the jury found, Aldrich's interests were defended loyally, earnestly and successfully by Gagne, and he is entitled to reasonable compensation as the jury concluded. *McKnight* v. *Gizze*, 119 Conn. 251, 255, 175 A. 676 (1934). Accordingly, the judgment of the trial court as it relates to the fourth count of Gagne's complaint is reversed.[19]

The judgment of the trial court is reversed in part and the case is remanded to the trial court with direction to render judgment for Gagne on count four of his complaint in accordance with the jury's verdict.

In this opinion the other justices concurred.

---

[18] In denying Vaccaro's motion for summary judgment, the trial court, *Licari, J.*, determined that the issue of waiver was an issue of fact. When it came time to instruct the jury on the law, however, despite evidence on the issue of waiver, the trial court determined, as a matter of law, that waiver did not apply in this case. Therefore, we do not read the jury's findings as tantamount to a decision of a knowing, intelligent and voluntary relinquishment of a known right, but, rather, as a factual determination that Aldrich intended for Gagne to be paid a portion of the attorney's fees for the services he had rendered on Aldrich's behalf. See *Majernicek* v. *Hartford Casualty Ins. Co.*, 240 Conn. 86, 96–97, 688 A.2d 1330 (1997).

[19] In light of our decision on the unjust enrichment count, we need not decide whether the trial court properly set aside the jury's verdicts on the first three counts of Gagne's complaint. Furthermore, although Gagne challenged the trial court's determination that proof of bad faith was not required in order for him to recover on his independent contract claim and his third party beneficiary claim, he did not challenge that issue separately as it relates to the CUTPA count. Therefore, we do not decide whether the trial court properly rendered judgment for Vaccaro on the CUTPA count. See footnote 9 of this opinion.