******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAURENCE V. PARNOFF *v.* DARCY YUILLE
(AC 36106)

Gruendel, Prescott and Pellegrino, Js.

*Argued October 28, 2015—officially released February 23, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Tobin, J. [judgment]; Hon. Richard P. Gilardi,
judge trial referee [motion for judgment, judgment].)

*Thomas J. Weihing*, with whom, on the brief, were *Dana P. Lonergan*, *John T. Bochanis* and *Laurence V. Parnoff, Jr.*, for the appellant (plaintiff).

*Barbara L. Cox*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The issue raised in this appeal requires us to assess whether an attorney who executes a fee agreement that violates General Statutes § 52-251c,[1] commonly known as the "fee cap statute," may, nevertheless, recover against the client under the doctrine of quantum meruit. The plaintiff, Laurence V. Parnoff, appeals from the judgment of the trial court, rendered on remand from this court, in favor of the defendant, Darcy Yuille. On appeal, the plaintiff claims that the trial court improperly rendered judgment in favor of the defendant on his claim of quantum meruit. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, set forth in the first appeal of this case, *Parnoff* v. *Yuille*, 139 Conn. App. 147, 57 A.3d 349 (2012), cert. denied, 307 Conn. 956, 59 A.3d 1192 (2013) (*Parnoff I*), and procedural history are relevant to our resolution of this appeal. On December 5, 1998, the plaintiff and the defendant entered into a contingent fee retainer agreement through which the defendant retained the plaintiff to seek damages for personal injuries that she sustained as a result of her employer's allegedly bad faith handling of her workers' compensation claim. Id., 152, 160. The fee agreement provided for a contingent fee of 40 percent, which exceeds the cap set forth in § 52-251c. Id., 152. An arbitration panel issued its decision on the personal injury case on June 29, 2004, and awarded the defendant damages in the amount of $1,096,032.93. Id., 153. The plaintiff sent the defendant an itemized invoice with an attorney's fee representing 40 percent of the gross settlement proceeds. Id. The defendant objected to the fee and, after the parties were unable to reach an accord, the plaintiff served a three count complaint against the defendant. Id., 153–54.

The first count alleged a breach of contract claim that was based on the written fee agreement. The second count alleged a quantum meruit claim. The third count alleged a bad faith claim, specifically, that the defendant's conduct was intentional and wilful. Id., 154–55. Following a jury trial, the jury found in favor of the plaintiff on the first and third count. Id., 157. As to the second count, quantum meruit, the jury was instructed that it need not reach the claim should the jury find the existence of a contract and a subsequent breach, which it did. Id., 157–58.

Following the verdict, the plaintiff appealed and the defendant cross appealed. Id., 159. This court held, inter alia, that the fee cap statute applied to the personal injury complaint that the plaintiff had brought on behalf of the defendant, and that a fee agreement that required payment of fees greater than permitted by the fee cap statute is not enforceable and against public policy. Id.,

161, 169, 172. This court reversed the judgment in favor of the plaintiff on the breach of contract and bad faith counts, and ordered the case remanded with direction to dismiss counts one and three of the complaint. Id., 173. This court did not address count two, quantum meruit, because neither party asked that the matter be remanded for a hearing. Id., 158 n.10.

On remand to the trial court, the defendant filed a "Motion for Judgment" and moved for judgment as a matter of law on count two. The trial court rendered judgment in favor of the defendant on count two, quantum meruit. This appeal followed.

The plaintiff argues that the trial court improperly granted the defendant's motion for judgment as to count two of his complaint. Specifically, he argues that count two was never decided on the merits by the jury and he requests his day in court. Although count two is captioned "unjust enrichment" and the plaintiff refers to it as such throughout his brief, this court, in *Parnoff I*, noted that the second count of the complaint "sets forth a claim more properly viewed as one in quantum meruit . . . ." *Parnoff* v. *Yuille*, supra, 139 Conn. App. 154. Accordingly, we will refer to it as such.

This court previously held that § 52-251c governs the fee agreement at issue and that the fee agreement violated the provisions of § 52-251c, making the entire contract unenforceable. Id., 161, 169. Thus, the only question is whether, under these circumstances, an attorney may nonetheless recover under the doctrine of quantum meruit. We hold that a lawyer who is barred from contract recovery because of the contract's failure to comply with the fee cap statute cannot recover under the doctrine of quantum meruit.

We begin with the principles of law that guide our discussion. "The determination of whether an equitable doctrine applies in a particular case is a question of law subject to plenary review." *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012).

"Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. . . . Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . Quantum meruit literally means as much as he has deserved . . . . Black's Law Dictionary (7th Ed. 1999). Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by reevaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001).

In *Parnoff I*, this court discussed the public policy considerations underlying § 52-251c. "If, as has been

stated, the purpose of the legislation when enacted was to protect the public from overreaching attorneys, enforcement of an overreaching fee agreement would violate such a policy even where recovery is limited to the statutory amounts because such a result would create no disincentive for an overreaching attorney and no corresponding public benefit. In other words, if an attorney could be assured of a fee no less than the amount provided by the fee cap statute, such an attorney, if unscrupulous, would have no reason, based in law, to limit fees to the statutory prescribed amount because enforcement of the contract in accordance with the statutorily permitted amount would simply become the lowest possible fee recoverable. That outcome, however, does not comport with the statute's stated purpose." *Parnoff* v. *Yuille*, supra, 139 Conn. App. 169–70.

In *Parnoff I*, this court was concerned with the public policy implications of allowing an attorney who executed a fee agreement in violation of § 52-251c to nonetheless recover under the contract, although at the amount provided by the fee cap statute. Id., 170. These same public policy concerns are present when an attorney seeks to recover in quantum meruit. An attorney who is permitted to recover in quantum meruit, although unable to recover under the unenforceable contract, would again, if unscrupulous, have no reason based in law to limit fees as required by § 52-251c if he knows that at the very least he can recover in quantum meruit. Accordingly, to permit a recovery in quantum meruit would render the statutory limits of the fee cap statute a meaningless legislative gesture.

Although recovery under a theory alternative to § 52-251c may sometimes be available, such is not the case here. In *Gagne* v. *Vaccaro*, supra, 255 Conn. 392, our Supreme Court held that § 52-251c did not prevent an attorney from recovering from a successor attorney in quantum meruit when the first attorney violated the provisions of the fee cap statute. The court concluded that the goal of the fee cap statute is to protect consumers from attorneys who charged excessive contingency fees. Id., 406. Therefore, the court concluded that the fee cap statute did not preclude recovery in that case because "[t]he ability of an attorney to recover from a successor attorney does not endanger the important public policy of protecting the public from excessive legal fees, particularly when the plaintiff's agreement with the defendant is a separate transaction from the plaintiff's agreement with the [client]." (Internal quotation marks omitted.) Id. In this case, allowing an attorney to recover from a client in quantum meruit when the fee agreement violated the fee cap statute would violate the public policy of protecting the public from excessive legal fees.

Further, the plain language of § 52-251c indicates that

other methods of recovery are forbidden by statute. Section 52-251c (b) provides in relevant part: "In any such contingency fee agreement such fee *shall be the exclusive method for payment* . . . ." (Emphasis added.) Had the legislature intended to allow an attorney to recover under equitable remedies, it could have explicitly done so, as it did in other consumer oriented statutes. For example, in determining the contours of § 52-251c, our Supreme Court has compared the fee cap statute to the Home Improvement Act, General Statutes § 20-418 et seq. See *Gagne* v. *Vaccaro*, supra, 255 Conn. 404. The Home Improvement Act specifically permits a noncompliant contractor to nevertheless recover money due in quantum meruit, in certain circumstances.[2] Thus, had the legislature intended to allow an attorney who violated the fee cap statute to nonetheless recover under equitable remedies, it could have specifically provided for such.

Accordingly, an attorney is unable to recover in quantum meruit when the attorney is barred from contractual recovery because the retainer fee agreement violated the fee cap statute and the fee cap statute precludes such recovery.

The plaintiff also claims that the trial court inappropriately acted on the defendant's motion, which was captioned "Motion for Judgment," because a standalone motion for judgment does not exist under our rules of practice. We do not agree that the trial court erred.

"The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

In *Grimm* v. *Fox*, 303 Conn. 322, 327 n.6, 33 A.3d 205 (2012), our Supreme Court held that a stand-alone motion for judgment does not exist in Connecticut. The court, however, construed the "Motion for Judgment" filed by the defendants in that case to be a motion for summary judgment and found no error in the trial court ruling on that motion. Id., 337. Furthermore, the caption of a motion is not dispositive, and "we look to the substance of the relief sought by the motion rather than the form . . . ." (Internal quotation marks omitted.) *Farren* v. *Farren*, 142 Conn. App. 145, 156, 64 A.3d 352, cert. denied, 309 Conn. 903, 68 A.3d 658 (2013).

In *Parnoff I*, this court held that a fee agreement governed by § 52-251c was the "exclusive method for payment of the attorney . . . ." (Internal quotation marks omitted.) *Parnoff* v. *Yuille*, supra, 139 Conn. App. 169. We have previously stated that "[t]he trial court

should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Emphasis omitted; internal quotation marks omitted.) *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 73 Conn. App. 492, 507, 808 A.2d 726, cert. denied, 262 Conn. 925, 814 A.2d 379 (2002). Thus, when the trial court rendered judgment in favor of the defendant on the quantum meruit count of the complaint, the trial court was acting in conformity with this court's holding in *Parnoff I*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-251c provides in relevant part: "(a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) the settlement amount received pursuant to a settlement agreement.

"(b) In any such contingency fee agreement such fee shall be the exclusive method for payment of the attorney by the claimant and shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars; (2) twenty-five per cent of the next three hundred thousand dollars; (3) twenty per cent of the next three hundred thousand dollars; (4) fifteen per cent of the next three hundred thousand dollars; and (5) ten per cent of any amount which exceeds one million two hundred thousand dollars. . . ."

[2] General Statutes § 20-429 (f) provides: "Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery."