******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NATIONAL WASTE ASSOCIATES, LLC *v.* DANIELLE SCHARF ET AL.
## (AC 39617)

Keller, Elgo and Bear, Js.

*Syllabus*

The plaintiff brought this action against the defendants, its former employees, S and D, and its business competitors, W Co. and O Co., for, inter alia, breach of contract, unjust enrichment and violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) and the Connecticut Uniform Trade Secrets Act (CUTSA) (§ 35-50 et seq.) in connection with their alleged improper use of certain confidential information and breach of contractual obligations. S, who had worked in the plaintiff's sales department, had signed a confidentiality and noncompetition agreement in which he agreed, inter alia, not to disclose confidential information or trade secrets of the plaintiff and not to solicit the plaintiff's customers or prospective customers for two years following the termination of his employment. Upon the termination of his employment, S signed a general release with the plaintiff, under which he agreed to abide by the terms of the agreement, and, in return, the plaintiff paid S $50,000. Thereafter, S worked briefly for O Co. and then was employed by W Co. During that time, S solicited business from a number of the plaintiff's customers, including G Co., which awarded a contract to W Co. following a reverse auction in which the plaintiff had participated. D also was employed by the plaintiff and thereafter was hired by W Co. Pursuant to his employment with the plaintiff, D had signed a confidentiality and noncompetition agreement. The trial court granted in part the motion for summary judgment filed by S, D and W Co., concluding that there was no genuine issue of material fact that the nonsolicitation provision in the agreements with S and D regarding prospective customers was unreasonable and that the provision was enforceable only as to prospective customers that S and D had solicited on behalf of the plaintiff during the six months prior to their departures from the plaintiff. The court also concluded that, as a matter of law, the plaintiff's CUTPA claims were preempted by CUTSA unless the CUTPA claim was not based on a misappropriation of a trade secret. Following a trial, the court rendered judgment in part in favor of the defendants. The court concluded that S had breached his agreement with the plaintiff by soliciting its customers and by successfully securing the G Co. contract for W Co. It awarded the plaintiff $50,000 in restitution, the amount of consideration that the plaintiff had paid S pursuant to the general release. The court, however, concluded that S was not liable under any other theory alleged by the plaintiff. In addition, the court determined that because S's agreement had expired before he was employed by W Co., it was unreasonable to enforce the agreement against W Co. and that the evidence did not support a finding of liability against D or O Co. On the plaintiff's appeal to this court, *held*:

1. The plaintiff's claim that the trial court improperly concluded that its unjust enrichment claims against W Co. and O Co. were barred by the existence of the agreement between the plaintiff and S was unavailing: the plaintiff mischaracterized that court's holding and confused the court's findings as to S with those it made as to W Co. and O Co., as the plaintiff's claim was predicated on two sentences in the section of the court's memorandum decision in which the court, while analyzing the plaintiff's claims against S, determined that the plaintiff could not recover against S in unjust enrichment for breaching the agreement, which was not a sufficient basis for this court to conclude that the trial court barred the subject claims against W Co. and O Co. due to the existence of the agreement, and the trial court, in addressing the plaintiff's claims against W Co. in a separate section of its decision, characterized W Co. as "innocent" and articulated its reasons for finding that enforcement of the agreement against W Co. would be unreasonable under any theory, and in doing so, the court applied an analysis consistent with the broad equitable principles inherent in the doctrine of unjust

enrichment; moreover, there was no indication in the record that the court failed to consider all the facts relevant to an unjust enrichment claim, nor did the record indicate that the court improperly concluded that the plaintiff's unjust enrichment claim against O Co. was barred by the existence of the agreement, and the broad language employed by the court to address the multiple claims brought against O Co. encompassed an examination of the circumstances and conduct of the parties based on the principles of equity and good conscience on which the doctrine of unjust enrichment is based.

2. The trial court's finding that the nonsolicitation provision in the plaintiff's employment agreements with S and D was unenforceable as to prospective customers was not clearly erroneous: contrary to the plaintiff's contention that the court improperly broadened the scope of its summary judgment ruling regarding prospective customers by erroneously finding in its decision after trial that the nonsolicitation provision was unenforceable as to any of the plaintiff's prospective customers, the record demonstrated that the court did not apply a blanket rule in its decision but, instead, examined whether the plaintiff had proved causation and damages with respect to any improper solicitation of prospective customers and concluded that it had not; moreover, the court mentioned the enforceability of the nonsolicitation provision only in the context of the plaintiff's claims against O Co. as to a certain known prospective customer, S Co., and the record contained evidence that substantiated the court's finding that S was unaware that S Co. was a prospective customer of the plaintiff, and, thus, that the provision was unenforceable as to S Co.

3. The plaintiff could not prevail on its claim that the trial court improperly failed to address its CUTPA claims that arose out of the misappropriation of trade secrets on the basis of its erroneous conclusion that CUTSA bars such claims, the trial court having found that the plaintiff did not lose any customers or prospective customers as a result of any misappropriated trade secret, and the plaintiff having failed to challenge that factual finding; moreover, the plaintiff's claim that the trial court improperly failed to consider its CUTPA claims that were unrelated to the misappropriation of trade secrets was unavailing, as there was nothing in the court's decision to suggest that it failed to consider those claims, the court determined that the plaintiff failed to prove causation in that it suffered no ascertainable loss as a result of S's actions, and the court's finding that the plaintiff could not prevail on its CUTPA claims was supported by the evidence and was not clearly erroneous.

Argued January 31—officially released July 31, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where the court, *Dubay, J.*, granted the plaintiff's motion to cite in Omega Waste Management, Inc., as a party defendant; thereafter, the defendant Omega Waste Management, Inc., was defaulted for failure to appear; subsequently, the court, *Devine, J.*, granted in part the motion for summary judgment filed by the named defendant et al.; thereafter, the matter was tried to the court, *Moukawsher, J.*; judgment in part for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*Richard F. Wareing*, with whom were *Anthony J. Natale* and *Angela M. Vickery*, for the appellant (plaintiff).

*Douglas P. Needham*, for the appellee (defendant Carl Slusarczyk).

*Jeffrey F. Allen*, pro hac vice, with whom were *Calvin K. Woo* and, on the brief, *Edward P. Hourihan, Jr.*, pro

hac vice, and *Mary P. Moore*, pro hac vice, for the appellees (defendant Danielle Scharf et al.).

*Opinion*

ELGO, J. The plaintiff, National Waste Associates, LLC, appeals from the judgment of the trial court rendered, in part, in favor of the defendants, Danielle Scharf, Carl Slusarczyk, Waste Harmonics, LLC (Waste Harmonics), and Omega Waste Management, Inc. (Omega).[1] On appeal, the plaintiff claims that the court improperly concluded that (1) the plaintiff could not prevail on its unjust enrichment claims, (2) a nonsolicitation provision in agreements between the plaintiff and its former employees was unenforceable as to its prospective customers, and (3) General Statutes § 35-57 (a) bars its claims under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The plaintiff commenced this action in August, 2012. The following facts, as found by the trial court or as stipulated to by the parties in their joint trial management report, are relevant to this appeal. The plaintiff, Waste Harmonics, and Omega are waste management brokers that provide waste removal and recycling services for their customers. Slusarczyk began working in the plaintiff's sales department in January, 2000. In 2004, Slusarczyk signed a confidentiality and noncompetition agreement (2004 agreement) in which he agreed, inter alia, not to disclose confidential information or trade secrets of the plaintiff, not to solicit the plaintiff's customers for two years following the termination of his employment or during the pendency of any violation, and not to disparage the plaintiff. In February, 2010, the plaintiff terminated Slusarczyk's employment. Slusarczyk at that time signed a general release with the plaintiff, under which he agreed to abide by the terms of the 2004 agreement, and in return, the plaintiff paid Slusarczyk $50,000.[2] At the time of Slusarczyk's departure, the plaintiff's client list included Guitar Center, Steak and Shake, Safelite, Daltile, and PetSmart.

In 2011, Slusarczyk worked briefly for Omega. During that time, Slusarczyk solicited Guitar Center on behalf of Omega and repeatedly contacted Guitar Center, Steak and Shake, Safelite, and Daltile. Following the commencement of this action, Slusarczyk deleted e-mails and destroyed his computer. The court inferred from those actions that the e-mails contained disparaging comments about the plaintiff. In May, 2012, Slusarczyk began working for Waste Harmonics.

Scharf was employed by the plaintiff from 2007 to 2011. Like Slusarczyk, Scharf signed a confidentiality and noncompetition agreement with the plaintiff. In June, 2012, Scharf was hired by Waste Harmonics.

After its contract with the plaintiff expired on June 30, 2012, Guitar Center conducted a reverse auction to select its next waste broker. In the auction, the plaintiff's bid was the highest cost bid, while Waste Harmon-

ics was the third lowest bid. In its May 9, 2016 memorandum of decision, the court found that Guitar Center ultimately awarded the contract to Waste Harmonics as a result of the professional relationship between Slusarczyk and a Guitar Center employee.

As to the plaintiff's other former customers, the court found no credible evidence that Slusarczyk's solicitations resulted in the nonrenewal of their contracts with the plaintiff. More specifically, the court found that Safelite chose to hire haulers directly rather than use a waste broker. Waste Management, the largest waste broker, offered Daltile a deal on landfilling, which Daltile accepted. PetSmart did not renew its contract with the plaintiff, preferring nontraditional recycling services offered by Waste Management. As to Steak and Shake, the court found that the plaintiff offered no evidence as to why its contract was not renewed.

Following the commencement of this action, the parties entered into a stipulated temporary injunction order on October 12, 2012, with respect to the allegedly improper use of certain confidential information and breach of contractual obligations by the defendants. On July 16, 2015, the plaintiff filed a fourth amended complaint that alleged breach of contract against Slusarczyk and Scharf; unjust enrichment against Waste Harmonics and Omega; tortious interference against Slusarczyk, Scharf, Waste Harmonics, and Omega; civil conspiracy against Slusarczyk and Omega; civil conspiracy against Slusarczyk, Scharf, and Waste Harmonics; violations of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., against Slusarczyk, Scharf, and Waste Harmonics; and violations of CUTPA against Slusarczyk, Scharf, Waste Harmonics, and Omega. On August 28, 2015, Scharf, Slusarczyk, Waste Harmonics filed a motion for partial summary judgment, which the court granted in part on October, 29, 2015.

A court trial was held over the course of eleven days in the spring of 2016. On May 9, 2016, the court issued its memorandum of decision. The court concluded that Slusarczyk breached his 2004 agreement with the plaintiff by soliciting its customers and by successfully securing the Guitar Center contract for Waste Harmonics. The court determined that the proper measure of damages for that breach was restitution of $50,000, the amount of consideration that the plaintiff paid Slusarczyk in order to keep his promise under the agreement.[3] The court nonetheless concluded that Slusarczyk was not liable under any other theory alleged by the plaintiff. In addition, the court found that although Slusarczyk solicited Steak and Shake, Safelite, Daltile, and PetSmart, he not only was unsuccessful in those efforts, but played no role in the plaintiff's failure to retain them as customers. The court found that Slusarczyk did not use any of the plaintiff's confidential information to

secure Murphy Oil and Pilot Travel as clients for Waste Harmonics, who also were prospective clients of the plaintiff. As the court noted in its memorandum of decision, the plaintiff's profit margins were high and uncompetitive. The court also determined that because the "objectively identifiable period of Slusarczyk's nonsolicitation agreement expired before he went to work for Waste Harmonics," it was unreasonable to enforce the 2004 agreement against Waste Harmonics. The court further found that the evidence did not support a finding of liability against Scharf or Omega on any count. This appeal followed.

I

The plaintiff first claims that the court improperly found that its unjust enrichment claims against Waste Harmonics and Omega were barred by the existence of the 2004 agreement between the plaintiff and Slusarczyk. Specifically, the plaintiff claims that a contract with a third party does not bar a claim of unjust enrichment against another party. Although the defendants do not dispute that legal principle, they contend that the plaintiff mischaracterizes the court's holding and confuses the court's findings made as to Slusarczyk with the findings it made as to Waste Harmonics and Omega. We agree with the defendants.

It is well established that "[u]njust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff. . . .  All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine." (Citations omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 409, 766 A.2d 416 (2001). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.  .  .  .  Our review of the trial court's conclusion that the defendant was unjustly enriched is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

The plaintiff's assertion that the court improperly barred its unjust enrichment claims as to Waste Harmonics and Omega is predicated on two sentences of the court's memorandum of decision, in which the court was analyzing the plaintiff's claims against Slusarczyk. The court stated: "[The plaintiff's] unjust enrichment claim[s] cannot hand Guitar Center's money to [the plaintiff] either. The misconduct at issue is covered by the contract, and as the Supreme Court affirmed in 2009 in *New Hartford* v. *Connecticut Resources Recovery Authority*, [supra, 291 Conn. 455], an action for unjust enrichment cannot lie in the face of an express contract." (Internal quotation marks omitted.) On the basis of those statements alone, we cannot conclude that the court barred the plaintiff's unjust enrichment claims against Omega and Waste Harmonics due to the existence of Slusarczyk's 2004 agreement with the plaintiff. As we read those statements, the court merely determined that the plaintiff could not recover *against Slusarczyk* in unjust enrichment for breaching the agreement with the plaintiff as a result of his solicitation of Guitar Center. Indeed, those statements were made in a section of the court's decision entitled "He [Slusarczyk] won Guitar Center for Waste Harmonics by breaking his promise," which section was devoted to determining the amount of damages the plaintiff was entitled to as a result of that breach. In this section, the court found that the plaintiff's contract with Guitar Center expired in 2012 and that Slusarczyk solicited and secured the Guitar Center contract for Waste Harmonics based on his rapport with a Guitar Center employee.

Furthermore, the court addressed all of the plaintiff's claims against Waste Harmonics later in its memorandum of decision in a separate section entitled "Waste Harmonics is Innocent." In that section, the court found that it would be unreasonable to hold Waste Harmonics liable for Slusarczyk's breach of contract when "[t]he objectively identifiable period of Slusarczyk's nonsolicitation agreement expired before he went to work for Waste Harmonics." The court also found that "[i]t is not reasonable to hold an employer responsible for something it did not know, with reference to an agreement it did not sign, about which it would be ill-equipped to judge." Because the court clearly found that it was not reasonable to enforce the 2004 agreement against Waste Harmonics "under any theory—conspiracy, agency or anything else," we will not presume that the court failed to consider the plaintiff's unjust enrichment claim against Waste Harmonics.

By characterizing Waste Harmonics as "innocent" and articulating its reasons for finding that enforcement of the 2004 agreement against Waste Harmonics would not be reasonable, the court applied an analysis consistent with the broad equitable principles inherent in the

doctrine of unjust enrichment. "[A] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, supra, 255 Conn. 408–409.

Even if the court addressed the plaintiff's unjust enrichment claim against Waste Harmonics on the merits, the plaintiff alternatively argues that the court committed reversible error by failing to consider all the facts relevant to an unjust enrichment claim and only considered Waste Harmonic's innocence. There is no indication in the record before us, however, that the court did so. In its memorandum of decision, the court specifically stated that it considered all of the disputed evidence. In this regard, we are mindful that "our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013).

In addition, we note that the court addressed the plaintiff's claims against Omega in a section of its memorandum of decision entitled "Omega: Damage cannot be assessed where it does not exist." In that section, the court concluded that "[t]o the extent [the plaintiff] claims Omega profited from Slusarczyk's wrongdoing, no damage from the wrongdoing can be calculated if there was no wrongdoing. . . . [The plaintiff's] claims against Omega derive solely from Slusarczyk's wrongs, so there can hardly be damages assessed where none was caused." Although unjust enrichment is not rooted on a theory of wrongdoing, the broad language employed by the court to address the multiple claims brought against Omega encompasses an examination of the circumstances and conduct of the parties based on the principles of equity and good conscience on which the doctrine of unjust enrichment is based. See *Gagne* v. *Vaccaro*, supra, 255 Conn. 408–409. There is no indication from the court's decision, either in the section discussing Omega or in the section regarding Slusarczyk that contains the language at issue in this claim, that the court improperly concluded that the plaintiff's unjust enrichment claim against Omega was barred by the existence of the 2004 agreement between the plaintiff and Slusarczyk. Accordingly, the plaintiff's claim fails.

## II

The plaintiff next claims that the court erroneously concluded that the nonsolicitation provision in its employment agreements with Slusarczyk and Scharf was unenforceable as to prospective customers (prospects). We disagree.

Connecticut law recognizes that "[b]y definition, covenants by employees not to compete with their employers after termination of their employment restrain trade in a free market. . . . Consequently, these covenants may be against public policy, and, thus, are enforceable only if their imposed restraint is reasonable, an assessment that depends upon the competing needs of the parties as well as the needs of the public." (Citation omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 761, 905 A.2d 623 (2006). Analysis of the validity and enforceability of such covenants entails a fact-specific inquiry. As our Supreme Court has explained, "[t]he five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 529 n.2, 546 A.2d 216 (1988).

The parties submit, and we agree, that the clearly erroneous standard of review governs the finding of the trial court as to the enforceability of a restrictive covenant in an employment agreement. Pursuant to that standard, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 221, 919 A.2d 421 (2007).

The provision in the plaintiff's employment agreements with Slusarczyk and Scharf is entitled "Non-solicitation of Customers/Prospects" and provides that "[f]or a period of two (2) years following the date of separation of employment from [the plaintiff] (for any reason), Employee shall not directly or indirectly solicit or otherwise seek to perform any competitive business with, or engage in any competitive business with, any clients or customers to whom [the plaintiff] has at any time prior to the date of Employee's separation of employment rendered services or sold products, or to whom [the plaintiff] has attempted to sell services or

products during the six (6) months prior to Employee's separation of employment with [the plaintiff]."

In their memorandum of law in support of their motion for summary judgment, Slusarczyk, Scharf, and Waste Harmonics argued that Slusarczyk and Scharf were entitled to judgment as a matter of law on the plaintiff's breach of contract claims because the nonsolicitation provision in Slusarczyk's and Scharf's employment agreements was unreasonably overbroad and provided no clarity as to which of the thousands of the plaintiff's prospects they were prohibited from soliciting. In its October 29, 2015 memorandum of decision on the motion for summary judgment, the court concluded that there was no genuine issue of material fact that the "very broad restriction" on prospects of the plaintiff was unreasonable. It stated: "Six months is not per se unreasonable, but without either defining prospects or applying it only to those the employee knows about, this provision sets itself up to be crushing. How can an employee obey such a restriction without knowing who the prospects are? Nothing about what has happened here changes that the language is subject to the kind of abuse that would result if an ex-employee can be charged for soliciting the recipients of an e-mail blast or other broad sweeping solicitation." In granting the motion for summary judgment in part, the court determined that it "will only enforce the restriction on business prospects to the extent that it relates to employer attempts to sell services or products through the employee covered by the restriction."

Approximately six months later, the court, in in its May 9, 2016 memorandum of decision, made an isolated reference to the unreasonableness of the restriction regarding prospects. In a section of the decision entitled "Omega: Damage cannot be assessed where it does not exist," the court remarked that "[w]here [the plaintiff] claims Omega won Sonic's business by virtue of Slusarczyk breaching his nonsolicitation agreement, it is fatal to any damage claim that there was no such breach since Sonic was a mere prospect and the agreement is unenforceable as to prospects."

On appeal, the plaintiff argues that the court's finding in its May 9, 2016 decision that the nonsolicitation provision was unenforceable as to prospects was clearly erroneous because the evidence at trial demonstrated that the restriction was reasonable and enforceable. The plaintiff also argues that the court ignored its ruling on the motion for summary judgment in which it held that the nonsolicitation provision was enforceable as to the plaintiff's prospects solicited by Slusarczyk and Scharf on behalf of the plaintiff during the six months prior to their departures from the plaintiff.

In its ruling on the motion for summary judgment, the court limited the enforceability of the nonsolicitation provision to a narrow range of prospects, specifically

those to which Slusarczyk and Scharf attempted to sell products or services during their employ with the plaintiff within six months of departure. Relying on this determination, the plaintiff argues that the court improperly broadened the scope of its summary judgment ruling by erroneously finding in its May 9, 2016 decision that the nonsolicitation provision was unenforceable as to any of the plaintiff's prospects.

The plaintiff cannot prevail on its claim that the court abandoned its summary judgment ruling and was precluded from considering any of its claims relating to the wrongful solicitation of prospects. Contrary to the plaintiff's contention, the record demonstrates that the court did not apply a blanket rule in its May 9, 2016 decision that the provision was unenforceable as to prospects. Rather, in its decision, the court examined whether the plaintiff proved causation and damages with respect to any improper solicitation of the plaintiff's prospects and concluded that it had not. The court found that Murphy Oil and Pilot Travel were "only prospects" and that there was no evidence that Slusarczyk used any secret information about them to win their business for Waste Harmonics. The court determined that it was not a secret that Murphy Oil's contract with the plaintiff had ended and that the plaintiff only had an 8.33 percent chance of winning the accounts. The court also determined that "[t]here is also no evidence that any misappropriated trade secret played any role in Slusarczyk's approaches to Music & Arts and Sonic."

The court further concluded that "[n]ot much changes by looking at [the plaintiff's] claims in tort, trade and trade secret violations. . . . [N]othing changes about any [prospects], because [the plaintiff] has not shown that any misconduct cost it any specific customer." The court also noted that an examination of the plaintiff's "other weakly presented prospects yields nothing further. Just because [the plaintiff] has strewn a variety of additional company names across the record does not mean they all merit individual scrutiny. Suffice it to say that the court has reviewed them against the range of claims [the plaintiff] has brought, but finds no support for the combination of factors that would have to be proved for it to recover under any theory . . . ."

The court mentioned the enforceability of the nonsolicitation provision only in the context of the plaintiff's claims against Omega as to the prospect known as Sonic. The court stated that "it is fatal to any damage claim that there was no such breach since Sonic was a mere prospect and the agreement is unenforceable as to prospects." The court provided no factual background involving Sonic and did not state whether Sonic was a prospect of which Slusarczyk had knowledge and had solicited while he was employed by the plaintiff or whether Sonic was a prospect about which Slusarczyk was unaware and was merely part of a broad sweeping

solicitation. When read in the context of the entire decision, in which the court examined the broad range of claims brought regarding various prospects and ultimately determined that the plaintiff could not prevail under any theory, and mindful that we do not presume error on the part of the trial court; see *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 197, 128 A.3d 901 (2016); it is apparent that the court, albeit unartfully, stated that Slusarczyk was unaware that Sonic was a prospect of the plaintiff, and, therefore, the provision was unenforceable regarding Sonic. Although conflicting evidence was presented at trial, the record contains evidence that substantiates that finding, as Slusarczyk testified that during his employment with the plaintiff, Sonic was not a customer and he had no knowledge of whether Sonic was a prospect. In light of the foregoing, we conclude that the court's finding that the nonsolicitation provision in the plaintiff's employment agreements with Slusarczyk and Scharf was unenforceable as to prospects was not clearly erroneous.

### III

As a final matter, the plaintiff claims that the court failed to address its CUTPA claims because it improperly concluded that § 35-57 (a) bars such claims. We are not persuaded.

General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." "The ascertainable loss requirement is a threshold barrier [that] limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." (Internal quotation marks omitted.) *Neighborhood Builders, Inc.* v. *Madison*, 294 Conn. 651, 657, 986 A.2d 278 (2010).

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . . All three criteria do not need to be satisfied to support a

finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Citation omitted; internal quotation marks omitted.) *IN Energy Solutions, Inc.* v. *Realgy, LLC*, 114 Conn. App. 262, 273–74, 969 A.2d 807 (2009). "To the extent that [an appellant] is challenging the trial court's interpretation of CUTPA, our review is plenary. . . . [W]e review the trial court's factual findings under a clearly erroneous standard." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 656, 850 A.2d 145 (2004).

In its complaint, the plaintiff claimed that Slusarczyk and Scharf violated CUTPA by misappropriating the plaintiff's trade secrets and using confidential information to solicit its customers and prospects to do business with Omega and/or Waste Harmonics. The plaintiff also alleged that Waste Harmonics and Omega violated CUTPA by misappropriating the plaintiff's trade secrets and soliciting the plaintiff's actual customers and prospects in furtherance of financial gain and profits. In its October 29, 2015 memorandum of decision on the defendants' motion for summary judgment, the court concluded, as a matter of law, that the plaintiff's CUTPA claims were preempted by CUTSA unless the CUTPA claim was not based on a misappropriation of a trade secret. Following trial, the court, in its May 9, 2016 memorandum of decision, stated that "[a]s previously held, nothing about [trade] secrets can be brought outside the contract and [CUTSA] because . . . § 35-57 (a) . . . preempts everything but the contract claim."

On appeal, the plaintiff argues that the court erred in holding that CUTSA bars its CUTPA claims that arise out of the misuse or misappropriation of trade secrets. The plaintiff contends that § 35-57 (a) does not preempt CUTPA claims arising out of the same facts. It also argues that the court failed to consider its CUTPA claims, even those unrelated to trade secrets, such as its claim that Slusarczyk and Scharf violated their post-termination obligations by systematically soliciting the plaintiff's customers and prospects.

We need not address the issue of whether a CUTPA claim based on misappropriation of a trade secret conflicts with CUTSA[4] and, therefore, is superseded by it. The court addressed the issue of misappropriation of trade secrets and found that the plaintiff did not lose any customers or prospects as a result of any misappropriated trade secret.[5] The plaintiff does not challenge that factual finding. Specifically, the court found that Slusarczyk secured the Guitar Center contract for Waste Harmonics but that he did not misappropriate any trade secrets in order to do so. The court determined that, prior to Slusarczyk's departure from the plaintiff, Elena Boone, a Guitar Center employee, knew that the plaintiff was concealing its markup, and thus

only that information could have informed Slusarczyk's solicitation of Guitar Center. The court also found that even if Slusarczyk misappropriated a trade secret when it informed Safelite via e-mail that it could obtain a 30 percent savings, the plaintiff did not lose this customer as a result of Slusarczyk, and, in any event, neither Omega nor Waste Harmonics obtained Safelite as a customer. Regarding prospects, the court found that the plaintiff had not shown that "any misconduct cost it any specific customer" nor has it "shown that any trade secret information was used to win any prospect . . . ." The court also found that there was no evidence that Slusarczyk used any misappropriated trade secret in his dealings with Music & Arts, Sonic, Murphy Oil or Pilot Travel.

The plaintiff argues that the court failed to consider its CUTPA claims that Slusarczyk and Scharf violated CUTPA by systematically violating posttermination obligations. There is nothing in the court's decision to suggest that the court failed to consider the plaintiff's CUTPA claims that were unrelated to trade secrets. In broad strokes, the court rejected a multitude of claims raised by the plaintiff and concluded that most of the damages the plaintiff sought were "unreasonable," because the plaintiff had not shown that it had lost any customer or prospect as a result of Slusarczyk's actions. The court found that the only damages that the plaintiff was entitled to was "limited relief" in the form of $50,000 in restitution for Slusarczyk's breach of contract and concluded that "not much changes" when the plaintiff's other claims, sounding in trade secret violations, CUTPA violations, and tort are examined. The court stated: "First, nothing changes about the customers [the plaintiff] lost because it has not proved that, but for any wrong, that it would still have any of these customers. Second, nothing changes about any [prospects], because [the plaintiff] has not shown that any misconduct cost it any specific customer." The court found that the plaintiff "did not lose much of anything to Waste Harmonics other than a valuable salesman." Although the court discussed many claims only in general terms, at its essence, the court found that the plaintiff did not prove damages beyond the $50,000 in restitution and reasonable attorney's fees. Essentially, the court determined that the plaintiff failed to prove causation in that it suffered no ascertainable loss as a result of Slusarczyk's actions.

As our Supreme Court has explained, "in the business context, a plaintiff asserting a CUTPA claim may satisfy the ascertainable loss requirement of § 42-110g by establishing, through a reasonable inference, or otherwise, that the defendant's unfair trade practice has *caused* the plaintiff to lose potential customers." (Emphasis added.) *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 643–44, 698 A.2d 258 (1997). Additionally "in order to prevail in a CUTPA action, a plaintiff must

establish . . . that the prohibited act *was the proximate cause of harm* to the plaintiff." (Emphasis added; internal quotation marks omitted.) *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709 (1997).

The court's rejection of the plaintiff's claim that Slusarczyk's violations of the 2004 agreement amounted to a CUTPA violation was not clearly erroneous. The court's related findings demonstrate that the plaintiff had not proven a loss as a result of Slusarczyk's actions. With respect to Guitar Center, the court found that "[the plaintiff] has not offered evidence to show that after coming in last in the auction it had some chance at winning the business. So, Slusarczyk's wrongs did not deprive [the plaintiff] of Guitar Center's business." The court determined that the plaintiff's 46 percent profit margin with Steak and Shake may suggest a reason for Steak and Shake's decision not to renew; that the plaintiff "was not even in the running for Safelite" and Safelite chose to hire its haulers directly; the plaintiff lost Daltile's business because it did not compete for renewal; it was reasonable to infer that the plaintiff's 43 percent profit margin with PetSmart or Waste Management's recycling offer played a role in the plaintiff's loss of PetSmart's business; the plaintiff only had a 8.33 percent chance of winning the Pilot Travel and Murphy Oil accounts; and the plaintiff's profit margins were uncompetitive. The court determined that additional companies mentioned by the plaintiff did not merit individual scrutiny and that the plaintiff had not proven recovery under any theory.

Additionally, the court determined that Slusarczyk's actions constituted "limited wrongs" by him. The court examined the businesses that Slusarczyk solicited and determined that he won Guitar Center's business for Waste Harmonics but that "Slusarczyk's wrongs did not deprive [the plaintiff] of Guitar Center's business." The court reasonably could have concluded that Slusarczyk's actions in soliciting customers amounted to nothing more than a failure to deliver on a promise, which in the absence of aggravating unscrupulous conduct, did not amount to a CUTPA violation. The court concluded that "[g]iven the actual magnitude of the wrong done here, the length and breadth of this lawsuit is more likely explained by commercial rivalry and a bitter break between employer and employee. Courts should respect postemployment agreements when they are used as shields but not when they are used as swords." "[N]ot every contractual breach rises to the level of a CUTPA violation." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010). "[A]bsent substantial aggravating circumstances, simple breach of contract is insufficient to establish [a] claim under CUTPA." *Lydall, Inc.* v. *Ruschmeyer*, supra, 282 Conn. 248.

The court determined that Waste Harmonics was "innocent" and that it was not reasonable to enforce the terms of Slusarczyk's 2004 agreement againt Waste Harmonics "under any theory." The court found that the "objectively identifiable [two year] period of Slusarczyk's nonsolicitation agreement expired before he went to work for Waste Harmonics. Michael Hess, Waste Harmonic's [chief executive officer], confirmed this before hiring Slusarczyk." The "limited wrongs" the court found Slusarczyk to have committed, which did not include a violation of CUPTA, rested on his violation of the 2004 agreement, but the court found that Waste Harmonics was not responsible for Slusarczyk's violations. The court's finding that Waste Harmonics did not violate CUTPA was not clearly erroneous.

Furthermore, the court rejected the plaintiff's claim against Omega and determined that "no damage from the wrongdoing can be calculated if there was no wrongdoing." The court also determined that the plaintiff's claims for damages against Scharf were discharged in bankruptcy, and the plaintiff does not challenge this finding. We therefore conclude that the court's finding that the plaintiff could not prevail on its CUTPA claims was supported by the evidence and, thus, was not clearly erroneous. Additionally, the court did not err as to the law in its analysis of the plaintiff's CUTPA claims.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Omega was defaulted due to its failure to appear and has not participated in this appeal. The plaintiff, however, is challenging the trial court's decision not to award it damages from Omega.

[2] In its October 29, 2015 memorandum of decision on the motion for summary judgment filed by Scharf, Slusarczyk, and Waste Harmonics, the court concluded, as a matter of law, that the 2004 agreement between Slusarczyk and the plaintiff was unenforceable for lack of consideration. The court further concluded that the general release Slusarczyk signed in 2010 included the same terms as the 2004 agreement and was supported by consideration and thus enforceable. Those determinations are not at issue in this appeal.

[3] In light of that determination, the court also ordered Slusarczyk to pay reasonable attorney's fees.

[4] General Statutes § 35-57 (a) provides: "Unless otherwise agreed by the parties, the provisions of this chapter supersede any conflicting tort, restitutionary, or other law of this state pertaining to civil liability for misappropriation of a trade secret."

General Statutes § 35-57 (b) provides in relevant part: "This chapter does not affect: (1) Contractual or other civil liability or relief that is not based upon misappropriation of a trade secret . . . ."

[5] The plaintiff's CUTPA claim was based, in part, on the same basic facts, namely, misappropriation of trade secrets, as its CUTSA claim.